## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 12-62173-Civ-SCOLA

BRET L. LUSSKIN, JR.,

    Plaintiff,

vs.

SEMINOLE COMEDY, INC.,

    Defendant.

_____/

### ORDER DENYING DEFENDANT'S MOTION TO DISMISS

This is a federal case about unwanted text messages. Bret L. Lusskin bought a ticket to a comedy show from the Defendant, Seminole Comedy, Inc. As part of an online transaction, Lusskin provided his cellular telephone number to Seminole Comedy. Lusskin was never asked if it was okay if Seminole Comedy contacted him, via his cell number, using an automatic-telephone-dialing system. Sometime after the ticket purchase, Lusskin began receiving text messages on his cell phone from Seminole Comedy promoting future events. Lusskin didn't think this was funny.

Lusskin sued Seminole Comedy for alleged violations of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA").[1] Seminole Comedy has moved to dismiss each of Lusskin's three counts. For the reasons explained in this Order, the Defendant's Motion to Dismiss is denied.

### I. MOTION TO DISMISS STANDARD

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the Complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[1] Lusskin has dismissed his claims in Count III, brought under the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal.  *See Twombly*, 550 U.S. at 555.  "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed.  *See Twombly*, 550 U.S. at 557.  "[T]he standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element."  *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008).  "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'"  *Twombly*, 550 U.S. at 556.

## II.  ANALYSIS & DISCUSSION

A.  <u>Count I:  Negligent Violation of the TCPA</u>

Seminole Comedy's motion to dismiss the TCPA claim is based solely on its reading of an Order from the Federal Communications Commission ("FCC").  Seminole Comedy asserts that Count I fails to state a claim as a matter of law because Lusskin admits that he provided his cell number to Seminole Comedy as part of the ticket-purchase transaction.  Despite the fact that Lusskin asserts that he never expressly consented to receiving text-message solicitations, Seminole Comedy argues that anytime a person provides his or her cell number to a vendor, that person has, as a matter of law, expressly consented to receive calls (or text messages)[2] from that vendor.  Seminole Comedy's position is predicated upon a Report and Order issued by the FCC.  The FCC Order reads, "persons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent

---

[2] Neither party disputes that, for purposes of a TCPA analysis, a text message is the same as a call.  *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

instructions to the contrary." *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752 (1992) ("1992 FCC Order").[3]

But, the TCPA states, "[i]t is unlawful for any person to "make any call (other than a call made . . . with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii). The purpose of the TCPA was to strike a balance between protecting the privacy of individuals while still permitting legitimate telemarketing practices. Tel. Consumer Prot. Act of 1991, Pub. L. No. 102-243, § 2, 105 Stat. 2394 (1991). In enacting the TCPA, Congress considered evidence that individuals "consider automated or prerecorded telephone calls, regardless of the content or the initiator of the message, to be a nuisance and an invasion of privacy." *Id.* Congress found that banning automated calls "except when the receiving party consents to receiving the call . . . is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* The TCPA gives the FCC the authority to establish regulations to implement the requirements of the Act. 47 U.S.C. § 227(b)(2).

"When determining whether to defer to an agency's interpretation of a statute it implements, the court follows the established *Chevron* framework." *Koch Foods, Inc. v. Sec'y, U.S. Dept. of Labor*, 712 F.3d 476, 480 (11th Cir. 2013). The first step is to ask whether Congress has directly spoken on the matter at issue. *See Jian Le Lin v. U.S. Atty. Gen.*, 681 F.3d 1236, 1239 (11th Cir. 2012). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. "The court reaches *Chevron* step two only if the statute 'is silent or ambiguous with respect to the specific issue' being interpreted by the agency." *Koch Foods*, 2013 WL 869645, at *3 (quoting *Nat'l Ass'n of State Util. Consumer Advocates v. F.C.C.*, 457 F.3d 1238, 1253 (11th Cir. 2006)). "Where the court finds that the statute is clear, as it does here, no deference is accorded to the agency's interpretation." *Koch Foods*, 712 F.3d at 480.

Congress has clearly stated that it is unlawful to call a cell phone using an automatic telephone dialing system without the "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Because the TCPA does not define the term "prior express consent," the Court

---

[3] 28 U.S.C. § 2342 does not deprive this Court of jurisdiction to consider the FCC's order because Lusskin's lawsuit does not seek to enjoin, set aside, annul, or suspend an FCC order; it is simply an action for damages under the TCPA. *See Mais v. Gulf Coast Collection Bureau, Inc.*, No. 11-61936, 2013 WL 1899616, at *5-8 (S.D. Fla. May 8, 2013) (Scola, J.).

looks to the common usage of those words to discern their meaning.  *See CBS Inc. v. PrimeTime 24 Joint Venture*, 245 F.3d 1217, 1222 (11th Cir. 2001). "Courts often look to the dictionary definitions of terms to determine their common usage."  *Koch Foods*,712 F.3d at 480. "[E]xpress consent" is defined as "[c]onsent that is clearly and unmistakably stated." Black's Law Dictionary 346 (9th ed. 2009).  Similarly, "express" is defined as "[c]learly and unmistakably communicated; directly stated." *Id.* at 661.  By contrast, "implied consent" is defined as "[c]onsent inferred from one's conduct rather than from one's direct expression," or "[c]onsent imputed as a result of circumstances that arise, such as when a surgeon removing a gall bladder discovers and removes colon cancer." *Id.* at 346.

The TCPA is clear that an automatic-dialing-system call is only lawful when the caller has the prior express consent of the recipient; the FCC's contrary ruling is not entitled to deference. The 1992 FCC Order infers consent when a person knowingly releases his or her phone number. *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752 (1992) ("1992 FCC Order").  It might be reasonable to infer that a person who gives his or her cell number to another party has consented to later be contacted, by that party, at that number through an automatic-dialing-system.  But this is just an inference (*i.e.*, a conclusion reached by considering the circumstances and deducing a logical consequence from a person's conduct). Because this conclusion must be inferred from conduct, that necessarily means that permission was not directly stated (*i.e.*, it was not expressed).  *See* Black's Law Dictionary 661 (9th ed. 2009) (defining "expressed" as being "not left to inference").  Because the 1992 FCC Order creates an exception for consent-by-inference, also known as "implied consent," the Order deviated from the plain language of the statute requiring "express consent."

Lusskin's admission that he provided his cell number to Seminole Comedy as part of the online ticket purchase does not mean that, as a matter of law, he consented to receive promotional text messages by Seminole Comedy through an automatic-dialing system.  Since Seminole Comedy's prior-express-consent argument is predicated solely on the 1992 FCC Order, the argument necessarily fails because the 1992 FCC Order deviates from the plain language of the statute on the express-consent issue.  This conclusion is further bolstered by Lusskin's factual allegations that (1) Seminole Comedy never told him that it might use his cell number to send him promotional text messages through an automatic-dialing system (Compl. ¶ 17), and (2) that he never gave his prior express consent to be contacted through an automatic-dialing system (Compl. ¶ 18).  The Motion to Dismiss Count I is denied.

B. *Count II: Willful Violation of the TCPA*

The TCPA allows a plaintiff to recover his or her "actual monetary loss," or $500 for each violation, whichever is greater. 47 U.S.C. § 227(b)(3)(B). If a court finds that a defendant "willfully or knowingly violated" the TCPA, "the court may, in its discretion," triple the amount of plaintiff's actual or statutory damages. Count II asserts that Seminole Comedy willfully violated TCPA. Seminole Comedy argues that there are no factual allegations to support a willful violation of the TCPA.

There appears to be a split of authority as to what constitutes a "willful" violation of the TCPA. *See Stewart v. Regent Asset Mgmt. Solutions*, No. 10-2552, 2011 WL 1766018, at *6 (N.D. Ga. May 4, 2011). Some courts hold that a defendant must know that it is violating the TCPA by placing a call using an automatic-telephone-dialing system. *Id.* This interpretation is a specific-intent approach. Other courts hold that a defendant need only be aware that it is placing a call using an automatic-telephone-dialing system, which happens to result in a violation of the TCPA – knowledge of the law being unnecessary. *Id.* This interpretation is a general-intent approach.

While Lusskin has not alleged sufficient facts to support a "willfulness" claim under the specific-intent approach, he has made sufficient allegations to support a "willfulness" claim under the general-intent approach. Accordingly, Seminole Comedy's motion to dismiss Count II, for failure to state a claim upon which relief may be granted, must be denied at this time.

### III. CONCLUSION

For the reasons explained above, it is **ORDERED** that the Motion to Dismiss (ECF No. 9) is **DENIED**.

**DONE and ORDERED** in chambers, at Miami, Florida, on June 19, 2013.

_____
**ROBERT N. SCOLA, JR.
UNITED STATES DISTRICT JUDGE**